IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHAD HANSEN and MELISSA HANSEN, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTRY MUTUAL INSURANCE CO. d/b/a COUNTRY FINANCIAL and ELITE CONSTRUCTION CO. INC., <br><br> Defendants. | 18 CV 244 <br><br> Magistrate Judge Jeffrey Cummings |

**MEMORANDUM OPINION AND ORDER**

On June 4, 2020, plaintiffs Chad and Melissa Hansen filed an emergency motion to compel an inspection of certain of defendant Country Mutual Insurance Co.'s computer systems and responses to plaintiffs' requests for production. (Dckt. #119). For the reasons stated below, plaintiffs' motion is granted in part and denied in part.

**INTRODUCTION**

Plaintiffs bring this putative class action alleging that defendant Country Mutual Insurance Co. ("CMIC") engaged in multiple acts of breach of contract, common law fraud, consumer fraud and deceptive business practices, unreasonable and vexatious claims practices, negligence, and conversion. Discovery in this case has been on-going for more than two years. In its response to plaintiffs' latest motion to compel, CMIC states that it "has produced nearly 55,000 page of documents, responded to more than 100 requests for production, answered 25 interrogatories with multiple subparts, conducted extensive meet and confers with plaintiffs

1

(involving dozens of emails, letters, and teleconferences), produced more than 300 sample claims files, produced two Rule 30(b)(6) witnesses on 21 topics, and worked extensively with one [of] its vendors, Verisk, to provide information requested by plaintiffs." (Dckt. #131 at 2). CMIC has also searched over 100,000 documents with search terms provided by plaintiffs' counsel. (Dckt. #131 at 6).

Plaintiffs do not dispute that CMIC engaged in the above efforts. Instead, in their reply, plaintiffs repeatedly – by the Court's count, no less than 13 times – accuse CMIC of making "misrepresentations" about the facts, the law, plaintiffs' counsel's statements, plaintiffs' arguments, the response by a third-party (Verisk) to plaintiffs' subpoena, and the content of certain exhibits. (Dckt. #135 at 1, 4, 5, 6, 9, 10, 11 & nn. 10, 12, 16; *see also* Dckt. #119-18 at 1-14 (listing alleged misrepresentations by defense counsel in open court)). Plaintiffs also accuse CMIC of "bad faith" and of "selectively quot[ing] Plaintiffs' counsel with the intent of misleading this Court through half-truths." (Dckt. #135 at 1, 12). Although the parties certainly have their differences, plaintiffs' repetitive accusations are largely unsubstantiated by the Court's review of the record. Furthermore, any relief that plaintiffs have obtained by virtue of filing this motion was obtained despite their incendiary rhetoric, and not because of it. This type of disfavored advocacy has muddled rather than clarified the nature of the parties' multi-faceted dispute and has made the Court's effort to sort things out more difficult.

## STANDARD GOVERNING PLAINTIFFS' MOTION TO COMPEL

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters*

*Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.,* 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter"). Discoverable information is not limited to evidence admissible at trial. Instead, such information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Nonetheless, "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Motorola,* 365 F.Supp.3d at 924. In particular:

> the discovery sought must not only be relevant, but it must be 'proportional' to the needs of the case, 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits.'

*Id., quoting Lechuga v. Magallanes,* No. MO:16-CV-00269-RAJ-DC, 2017 WL 8181556, at *1 (W.D.Tex. July 7, 2017). Once the moving party has made a preliminary showing that "the discovery it seeks is relevant to the case and proportional to the needs of the party," *Sanchez v. City of Fort Wayne,* No. 118CV00397HABSLC, 2019 WL 6696295, at *2 (N.D.Ind. Dec. 9, 2019) (citing cases), "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Id.* (internal quotation marks omitted).

## ANALYSIS

The matters that are at issue between the parties concern plaintiffs' requests for: (1) production of the XactAnalysis Data; (2) complete production of the XactAnalysis reports that CMIC has run in the past; (3) an inspection of CMIC's XactAnalysis software; (4) production of

3

unredacted versions of documents that were redacted based on CMIC's assertion that certain information in the documents is non-responsive to plaintiffs' requests; (5) more complete responses to certain of plaintiffs' requests for the production of documents; (6) production of information related to CMIC's experts before the close of fact discovery; and (7) an expansion of the number of topics that they will be allowed to include within their notice for the remaining session of their Rule 30(b)(6) deposition of CMIC.

**A.     Production of the XactAnalysis Data**

XactAnalysis is a data analytics software program that CMIC has used since 2015. (Dckt. #131 at 12). Judge Pallmeyer has previously ruled, and defense counsel have agreed, that CMIC should work with Verisk and endeavor to produce the underlying XactAnalysis data to plaintiffs' counsel so that plaintiffs' counsel can retain an expert to analyze it. (*See* Dckt. #104 (transcript from 1/9/20) at 6; Dckt. #108 (transcript from 2/6/20) at 22; Dckt. #130 (transcript from 2/13/20) at 2-3)). The parties blame each other for why the XactAnalysis data has not yet been produced to plaintiffs. CMIC asserts that plaintiffs have not provided Verisk (CMIC's vendor) with the information that Verisk needs to produce the documents. (Dckt. #131 at 13-14). Plaintiffs assert that they "have set forth the data points that they need from CMIC's existing XactAnalysis dataset in three different formats, including by report name" and that CMIC has refused four requests by plaintiffs to schedule a call with Verisk so that Verisk's issues can be resolved and the data produced. (Dckt. #135 at 2). To resolve this issue, this Court orders the parties to schedule a conference call between themselves and Verisk within seven days of the entry of this order so that plaintiffs can clearly identify the XactAnalysis data they seek and the data can be promptly produced to them by Verisk.

4

B.  **Production of the XactAnalysis Reports that CMIC has previously run**

Plaintiffs have sought and CMIC has agreed to produce (Dckt. #104 at 6) any reports that CMIC has run using the XactAnalysis software program. CMIC represents that it "has produced XactAnalysis reports during the relevant time frame based upon searches of custodian records likely to hold such reports" and that it is not withholding any reports. (Dckt. #131 at 7). Nonetheless, plaintiffs assert that CMIC has "only produced a couple of reports." (Dckt. #135 at 5 n.10). Plaintiffs have represented, without contradiction, that XactAnalysis can generate a report of the reports previously run by CMIC in XactAnalysis. (Dckt. #119 at 11 (citing to Dckt. #119-8; Dckt. #119-9 at 8)). To resolve the parties' dispute on this issue, the Court orders CMIC to run a report of the reports that it has previously run on XactAnalysis and to produce representative copies of each type of report to the extent that such reports have not been produced already. CMIC shall comply with this directive within fourteen days of the entry of this order and defense counsel shall certify CMIC's compliance. *See CSMC 2007-C4 Egizii Portfolio LLC v. Springfield Prairie Properties, LLC,* No. 15-3195, 2018 WL 7859720, at *3 (C.D.Ill. Aug. 31, 2018) (requiring counsel to certify parties' compliance with discovery order); *Learning Resources, Inc. v. Playgo Toys Enterprises Ltd.,* No. 19-CV-00660, 2020 WL 2061536, at *3 (N.D.Ill. Apr. 29, 2020) (same, citing cases).

C.  **Plaintiffs' request to inspect CMIC's XactAnalysis Software**

Plaintiffs request that the Court compel CMIC to grant plaintiffs access to CMIC's XactAnalysis software so that plaintiffs may view all of the data CMIC has access to in the same format as CMIC has access to the data. CMIC objects to plaintiffs' request for a forensic examination on the grounds that it is based on "suspicion" and "speculation," and that allowing access to plaintiffs would be "unduly intrusive due to access to private information of insureds,

5

regulations and licensure requirements [CMIC] is subject to, and the need for extensive resources from [CMIC]." (Dckt. #131 at 4, 5 (citing to Dckt. #131-4 (declaration of Douglas Carroll))). The Court agrees with CMIC and finds that plaintiffs' request for a forensic examination is inappropriate under the circumstances of this case

> As this Court has previously recognized,
>
> A forensic ESI exam constitutes an extraordinary remedy that is required "[o]nly if the moving party can actually prove that the responding party has concealed information *or* lacks the expertise necessary to search and retrieve all relevant data." *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08-CV-693, 2009 WL 3347101, at *1 (E.D.Wis. Oct. 15, 2009) (emphasis added). . . . "Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient to support an intrusive examination of the opposing party's electronic devices or information system." *Hespe v. City of Chicago*, No. 13 C 7998, 2016 WL 7240754, at *4 (N.D.Ill. Dec. 15, 2016) (internal quotes and citation omitted). In determining whether a third-party exam is required, courts must guard against undue intrusiveness and protect the non-moving party's privacy interests. *See John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008).

*Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *2 (N.D.Ill. Dec. 23, 2019).

Although plaintiffs assert that their request is justified by CMIC's "misconduct," they have failed to meet their burden of showing that CMIC has either concealed data or that CMIC – in conjunction with Verisk – lacks the expertise to produce the relevant data. Furthermore, there is no question that a forensic examination would be unduly intrusive given the nature of the data CMIC has on its system. Finally, it appears that plaintiffs seek a forensic examination only as a backup plan since "CMIC has not produced the data and has repeatedly rejected [p]laintiffs' attempts to have a conference call with Verisk to get to a solution." (Dckt. #135 at 6). No backup plan is necessary here because this Court has ordered CMIC to participate in a conference call with Verisk and plaintiffs will receive the data they seek.

**D.     The production of documents that CMIC redacted based on non-responsiveness**

CMIC acknowledges that it has "redacted certain non-responsive information, most of which is related to the company's business operations and financial data," from the documents that it produced to plaintiffs in discovery. (Dckt. #131 at 11). Plaintiffs question CMIC's claimed right to redact the documents it produced based on its unilateral determination that material within the documents is non-responsive. (Dckt. #119 at 2). Plaintiffs' suspicions are heightened by the fact that CMIC produced other documents without redaction that contain "clearly unresponsive" information concerning "company vehicles, farm irrigation claims, [and] auto insurance." (Dckt. #119 at 2). CMIC has offered to resolve this issue by producing "unredacted *or lesser redacted copies*" of the documents in question. (Dckt. #131 at 11) (emphasis added).

The question of whether parties have a unilateral right to redact unresponsive portions of otherwise responsive documents prior to producing them is one that has divided the courts.[1] *See, e.g., Shell Offshore, Inc. v. Eni Petroleum US LLC,* No. CV 16-15538, 2017 WL 11536165, at *3-4 (E.D.La. Aug. 28, 2017) (citing competing lines of authority). Those courts that prohibit such unilateral redactions do so for multiple reasons. *See, e.g., id.* at *3-5; *U.S. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC.,* No. 13-CV-04307, 2015 WL 2148394, at *2-3 (N.D.Ill. May 5, 2015); *U.S. ex rel. Simms v. Austin Radiological Ass'n,* 292 F.R.D. 378, 385-87 (W.D.Tex. 2013); *Beverage Distribs., Inc. v. Miller Brewing Co.,* No. 2:08-CV-1112, 2010 WL 1727640, at *4 (S.D.Ohio Apr. 28, 2010).

---

[1] The sole case CMIC cites in support of its position is inapposite because the documents that the producing party asserted were non-responsive were not unilaterally redacted by that party but were instead submitted to the court for its *in camera* review. *See Kirsch v. Brightstar Corp.,* 68 F.Supp.3d 846, 857 (N.D.Ill. 2014). Notably, after its review, the court disagreed with the producing party's assertion that many of the documents were irrelevant and it ordered the party to produce the documents in unredacted form. *Id.*

First, "the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use [which] renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case." *Beverage Distribs.,* 2010 WL 1727640, at *4. Second, courts "should not be burdened with an in camera inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege." *Id.* Third, "[r]edaction is . . . an alteration of potential evidence and a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case." *Simms,* 292 F.R.D. at 386 (internal quotation marks omitted); *Bartholomew v. Avalon Capital Group, Inc.,* 278 F.R.D. 441, 451 (D.Minn. 2011) ("irrelevant information within a document that contains relevant information may be highly useful to providing context for relevant information"). Finally, unilateral redactions "breed suspicion" (*Simms,* 292 F.R.D. at 386), particularly in cases – like this one – where a regrettable lack of trust has developed between the parties.

This Court finds persuasive the line of authority which precludes a producing party from making unilateral redactions to otherwise responsive documents on the grounds that the documents contain non-responsive or irrelevant information where there is a confidentiality order in place. CMIC will suffer no harm if the documents are produced without redactions given the existence of the amended agreed confidentiality order. (Dckt. #55). Consequently, the Court orders CMIC to produce to plaintiffs fully unredacted copies of the redacted documents in question within fourteen days of the entry of this order.

**E.     Full compliance with plaintiffs' requests for the production of documents**

Plaintiffs move to compel CMIC's full compliance with five of its amended requests for the production of documents.

**1.     Amended Request for Production 12**

In their amended request for production 12, plaintiffs seek the production of any documents and data "discussing, relating to, and/or analyzing the number of claims completed by [CMIC]'s adjusters that do not comply with [CMIC]'s policies and procedures and any efforts to reduce the number of claims that are not being handled in accord[ance] with [CMIC]'s policies and procedures." Plaintiffs moved to compel full compliance with this request because CMIC's initial responses did not state whether it was withholding any otherwise responsive documents under the self-evaluative protection privilege. After plaintiffs filed their motion, CMIC served a second supplemental response to this request in which it indicated that it had produced final summary reports pertaining to periodic audits of property claims data and pertaining to data between January 12, 2008 and June 15, 2016 but that it had withheld documents containing raw rather than summary data based on its objections (lack of relevance, undue burden, and that production of such documents would not be proportional to the needs of the case). (Dckt. #135 (attachment 7 at 5)).

Although plaintiffs complain about CMIC's failure to produce documents containing the raw underlying data (Dckt. #135 at 3), it is evident – as CMIC asserts – that the parties have not exhausted their efforts to meet and confer regarding this issue. Accordingly, plaintiffs' motion to compel the production of documents containing the raw underlying data is denied without prejudice to plaintiffs' reassertion of this issue following exhaustion of their meet and confer efforts with CMIC.

9

### 2. Amended Request for Production 13

Plaintiffs' amended request for production 13 seeks the production of documents concerning the training of CMIC's adjusters. CMIC asserts in its response that it has fully complied with this request and that plaintiffs – who have deposed its Supervisor of Claims Training – "have not provided any basis for contending [CMIC] is withholding responsive documents." (Dckt. #131 at 6). In their reply, however, plaintiffs assert that there are several "categories of documents which had not been produced based on that deposition." (Dckt. #135 at 12 (citing to Dckt. #119-18 at 10-12)). In particular, plaintiffs assert that CMIC did not produce: (1) "recorded statement templates"; (2) claims "know-hows"; (3) claims training videos; (4) Xactimate Macros; (5) Training PowerPoints; and (6) Realtime topics. (Dckt. #119-8 at 10-11). Within fourteen days of the entry of this order, defense counsel are ordered to confer with CMIC and certify either that CMIC has produced the above documents or provide an explanation as to why they cannot be produced. *See CSMC 2007-C4*, 2018 WL 7859720, at *3; *Learning Resources*, 2020 WL 2061536, at *3.

### 3. Plaintiffs' amended production requests 18 and 21

In amended production request 18, plaintiffs seek documents concerning the percent of replacement cost holdback that CMIC paid, the amount of depreciation on claims, the percent of items priced using CMIC's databases, and the percent of items below average, average, good, and excellent on CMIC's estimates. In amended production request 21, plaintiffs seek documents related to how accurate the values in CMIC's estimating programs are, including how often claimants request an increase above the amount stated for an item in the database. CMIC asserts that it has nothing to produce regarding these requests because it does not track the requested information and it is not obligated to create documents that do not exist in the ordinary

10

course of business for plaintiffs' use in this case. (Dckt. #131 at 6, 8). In their reply, plaintiffs assert that CMIC does, in fact, track and run XactAnalysis reports regarding the requested information. (Dckt. #135 at 12).

No further relief is warranted with respect to these requests given the Court's rulings regarding CMIC's XactAnalysis reports and the XactAnalysis data. If CMIC has, in fact, run XactAnalysis reports regarding the information that is the subject of these requests as plaintiffs contend, CMIC will be required to produce them.

### 4. Plaintiffs' amended request for production 32

Plaintiffs' amended document request 32 seeks the production of documents relating to how and/or when withheld depreciation is to be paid. Plaintiffs assert that documents concerning CMIC's policy regarding withheld depreciation exist while CMIC argues that the testimony of its Rule 30(b)(6) witness Brad Keck refuted plaintiffs' assertion. In his deposition, Keck was asked whether CMIC has "any sort of standard for how quickly an adjuster is supposed to pay withheld depreciation once they receive proof" and he responded by stating that "I don't know that I know of a standard day that we've written down." (Dckt. #135-16 at 3 (Keck deposition, at 107)). Keck's equivocal answer does not resolve the question of whether CMIC has a written policy or standard regarding when withheld depreciation is to be paid. Defense counsel are ordered to confer with CMIC and certify within fourteen days of the entry of this order either that CMIC has no written policy or standard regarding payment of withheld depreciation or that CMIC has such a policy and that it has been produced to plaintiffs. *See CSMC 2007-C4*, 2018 WL 7859720, at *3; *Learning Resources*, 2020 WL 2061536, at *3.

11

**F.     Production of information related to CMIC's experts prior to the close of fact discovery**

CMIC has produced a sample set of more than 300 claim files but it has refused to produce during fact discovery the source code used to select the statistical sample on the ground that the code is its expert's work product. It is apparent that CMIC intends to produce the source code when its expert provides their written report. (Dckt. #131 at 11). Plaintiffs seek to compel CMIC to produce the source code prior to the onset of expert discovery based on their assertion that there is no rule or order of this Court that provides that expert discovery does not begin until after fact discovery closes. (Dckt. #135 at 4 & n.8). Plaintiffs are incorrect. Judge Pallmeyer's May 18, 2020 order provides for expert discovery to commence one month *after* fact discovery closes. (Dckt. #117). CMIC has no obligation to disclose its expert's work product until it is required to do so by order of the Court. Fed.R.Civ.P. 26(a)(2)(D). Consequently, plaintiffs' request to compel the production of the source code prior to the close of fact discovery is denied.

**G.     Plaintiffs' request to reconsider the Court's prior limitation on the number of topics that they may include in their Rule 30(b)(6) notice to CMIC**

Plaintiffs initially served CMIC with a Rule 30(b)(6) deposition notice seeking testimony on 59 topics. CMIC provided plaintiffs with a Rule 30(b)(6) witness as to 16 of these topics. The parties appeared before Judge Pallmeyer on May 15, 2019 and she struck the 59 topic notice and ordered a 10 topic limit for the remainder of CMIC's Rule 30(b)(6) deposition. (Dckt. #75). In January 2020, plaintiffs served a second Rule 30(b)(6) notice with five topics and CMIC produced a deponent on those topics later that month. Plaintiffs have now served a 12 topic notice for the remainder of CMIC's Rule 30(b)(6) deposition. CMIC is willing to produce a witness for five of the topics in plaintiffs' latest notice, which would complete the ten topic

allotment allowed by Judge Pallmeyer's May 15, 2019 order. Plaintiffs request that this Court reconsider this limitation and allow them to pursue all 12 topics in their latest notice.

This Court finds that plaintiffs have presented no basis to reconsider Judge Pallmeyer's prior order and it denies their request to do so. The Court notes that plaintiffs are afforded the opportunity to question CMIC's Rule 30(b)(6) witnesses on a total of 26 topics under the current limitation and that – according to CMIC – plaintiffs' 12 topic deposition notice includes five topics that are duplicative of topics for which CMIC's first two Rule 30(b)(6) witnesses were produced. Plaintiffs are ordered to submit to CMIC a revised Rule 30(b)(6) notice that contains no more than five topics within seven days of the entry of this order. The parties are further ordered to confer and select a mutually convenient date for the completion of CMIC's Rule 30(b)(6) deposition within twenty-eight days of the entry of this order.

## CONCLUSION

For all of the above reasons, plaintiffs' emergency motion to compel an inspection of certain of defendant Country Mutual Insurance Co.'s computer systems and responses to plaintiffs' requests for production [Dckt. #119] is granted in part and denied in part.

**ENTERED:** September 28, 2020

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**

13